This is an appeal by plaintiffs-appellants from the Circuit Court of Houston County, Alabama. That court, after an oretenus hearing, entered a judgment for the defendants-appellees.
Appellants' cause of action under their complaint, as set out in the trial court's pretrial order, was for damages for a breach of warranty. The plaintiffs-appellants alleged that the defendants-appellees sold a tract of land to the appellants and warranted that the property was suitable for the appellants to move a house trailer upon the land and to live there as a residence. The appellants further alleged that the property was not suitable as a homesite due to the fact that they had been denied a health permit to place a septic tank on the premises.
The appellees-defendants, however, argued that no representation or warranty was made concerning the placement of a septic tank. The appellees also contend that no mention was made of a septic tank or health certificate during the entire negotiations concerning the property.
As noted above, after an ore tenus hearing, the court entered judgment for the defendants-appellees.
At the outset, we note the time-honored principle that when evidence is heard ore tenus, every presumption will be indulged in favor of the trial court's findings of fact. These findings will not be disturbed on appeal unless plain and palpably wrong. This rule is especially applicable when oral testimony of witnesses is in direct conflict and some of the testimony supports the trial court's findings. See Ingram v. Bank ofBrewton, Ala.Civ.App., 340 So.2d 815 (1976); Rafield v.Johnson, 294 Ala. 235, 314 So.2d 695 (1975).
The record reveals that appellant-Scott contacted appellee-Docking, a real estate broker, in an effort to purchase some property on which he would set up his trailer. Appellants purchased the lot in question for $1,150 and then proceeded to clean up the property and put down a well. They subsequently attempted to get a permit from the Houston County Health Department in order to set up a septic tank, but they were denied such. Appellants were thereby, for all practical purposes, prevented from setting up their trailer on the property although testimony reveals that there were several trailers in the area which had such septic tanks.
The pivotal question in this case is whether there was a representation or warranty made to the appellants regarding the suitability of the land for its intended use. The testimony of the witnesses, as revealed by the record, is in dispute as to this subject.
For better understanding of the basis of this conflict, the parts of appellant-Scott's testimony dealing with the "representation or warranty" is set out below.
 "Q Now, on your first visit to the lot, was any possible prospective use of that land discussed?
 "A Not a bit. Just all she told me, says, `This land is ready to go. All you've got to do is clean it off, put your well down, and the county will take care of your streets for you.'
 "Q Did you tell her what, if anything, you intended to use the property for?
 "A I told her I was going to put a trailer on it. Put a house trailer on it.
 "Q And did you tell Mrs. Docking that you intended to live in that trailer as your residence?
 "A I intended to live in it. Because, I told her that's exactly what I wanted to buy it for, to live on it, so I could get out from where I was at.
. . . . . *Page 1145 
 "Q What, if anything, did Mrs. Docking reply to you, after you told her you were buying the property to live on it?
 "A Well, the only thing she said, she said, `It's ready to go. All you've got to do is clean it off. Get your power pole down. Get on it.'"
Likewise, the testimony of appellee-Docking dealing with the same issue is set out below.
 "Q I'll ask you, if before the sale of this property to Mr. and Mrs. Scott, if you knew whether or not a septic tank permit could be granted on the particular lot?
"A I did not.
 "Q I'll ask you if you made any representations to Mr. Scott that a septic tank permit could be granted?
"A I did not.
. . . . .
 "Q And did you make any kind of representations to them, other than the property was unrestricted?
 "A That's the essence of my representations, was that, for all practical purposes, as far as I knew, they could put a trailer, a house, or anything there."
From the above, it can be seen that the trial court could have found no express warranty was made by the defendants regarding the suitability of the land for its intended use. Clearly, no warranty relating to the septic tank was established below. In any event, we cannot say the findings by the trial court are plain and palpably wrong.
Furthermore, while Alabama courts recognize the implied warranty of fitness and habitability for the purpose purchased in newly constructed homes, we know of no such implied warranty extending to the purchase of lands. The physical condition of the premises has fallen under the rule of caveat emptor. SeeCochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971); 77 Am.Jur.2d Vendor and Purchaser § 329.
We also note that the facts in this case do not present a situation in which there was a failure to disclose or a fraudulent concealment. See Jackson Company v. Faulkner,55 Ala. App. 354, 315 So.2d 591 (1975).
In summary, the trial court could well have found that no warranty, expressed or implied, existed in this case and we cannot say that such finding is plain and palpably wrong.
The case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.