The plaintiffs, Maurine Mason and his wife Mamie Mason, appeal from a summary judgment entered for the defendants Chrysler Corporation and its dealer, Royal Motor Company, in an action to recover for fraud. We affirm.
A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Gray v. Liberty Nat'l Life Ins. Co.,623 So.2d 1156 (Ala. 1993). We review a summary judgment by the "substantial evidence" rule. Under this rule, once the movant has made a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the non-movant must rebut this showing by presenting "substantial evidence" creating a genuine issue of material fact. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870 (Ala. 1989);Henson v. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Ala. Code 1975, § 12-21-12(d). Also, reasonable doubts concerning the existence of a material fact must be resolved in favor of the nonmoving party. Henson; Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990).
The evidence, viewed in a light most favorable to the plaintiffs, suggests the following: On November 26, 1986, the Masons bought a 1987 Chrysler Fifth Avenue automobile from Royal Motor Company. Before the purchase, the Masons had seen and heard television advertisements and had read magazine and newspaper advertisements regarding to the 1987 Chrysler Fifth Avenue. These advertisements indicated that the 1987 Fifth Avenue was a luxury car and was a quality-engineered, reliable, and smooth-riding car. Neither of the Masons recalls the exact wording of all of the advertisements, but they do recall that the representations made indicated that that car was a smooth-riding, luxury car and that it was comparable in comfort, ride, and engineering to other large highway cars, but was much less expensive. The Masons allege that the salesman at Royal Motor Company represented the Chrysler Fifth Avenue as "comparable or close to the ride or it was like a Cadillac or Lincoln Town Car or something to that effect" and that the Chrysler warranty "was the best . . . comparable to Cadillacs and Lincoln Town cars."
Less than one month after purchasing the Fifth Avenue, the Masons complained that the car began to vibrate at speeds between 65 and 75 miles per hour. Within the first year of ownership, they noticed a problem *Page 953 
with "hesitation" and noticed that the car was "hard to pull in gear." Within 18 months of the purchase, the Masons noticed that the paint on the car's exterior was discolored. They complained of other engine problems, window problems, and some problems with the door locks. Within the first two years of ownership, the Masons noticed that applying the brakes caused the vehicle to "sway." The record indicates that Chrysler Corporation was aware of the recurring problems and that, beginning in 1983, Chrysler supplied its dealerships with a "repair kit" that would help the hesitation problem when the kit was installed.
The Masons sued Chrysler Corporation and Royal Motor Company, alleging fraudulent representation, suppression of material facts, breach of warranty, breach of a third-party-beneficiary contract, negligent repair, and several other claims. In their complaint, the Masons claimed that both defendants represented the car to be a smooth-riding, luxury car and failed to disclose that the Chrysler Fifth Avenue had recurring defects. The trial court held that the defendants' representations about the Fifth Avenue were "puffing" and that the fraud claims were not actionable under the authority of McGowan v. ChryslerCorp., 631 So.2d 842 (Ala. 1993). The trial court entered a summary judgment for defendants on all claims. The Masons appeal.
On appeal, the Masons argue two grounds upon which they say summary judgment should be reversed. First, they argue that the alleged representations by both defendants were not "puffery" or statements of opinion, as the trial court held, but were actionable misrepresentations on which a fraud claim can be based. Second, the Masons argue that a confidential relationship existed between them and the defendants and that that relationship created a duty on the part of Chrysler and Royal Motor Company to disclose any alleged defects in the Fifth Avenue line of vehicles. The Masons argue that the failure to disclose these alleged defects constituted an actionable suppression of material facts. We disagree.
This case is one of a series of cases filed by counsel for the plaintiffs alleging that Chrysler misrepresented the quality and reliability of its Fifth Avenue line of automobiles in the mid-to late 1980's. This Court's opinion in McGowan v.Chrysler Corp., 631 So.2d 842 (Ala. 1993), is instructive on the issues presented in this case. Under the holding ofMcGowan, we must conclude that the representations alleged by the Masons simply do not rise to the level of fraudulent representation.
To establish a cause of action for fraudulent representation or fraud, the Masons must show 1) that the defendant made a misrepresentation, 2) that that misrepresentation concerned a material existing fact, which was 3) that the plaintiff relied on the representation, and 4) that the reliance was to the plaintiff's detriment. Ala. Code 1975, § 6-5-101; Crowder v.Memory Hill Gardens, Inc., 516 So.2d 602 (Ala. 1987); see,McGowan, supra.
The Masons purchased the 1987 Chrysler Fifth Avenue on November 26, 1986. They had purchased cars before and were familiar with the car-buying process. In her deposition, Mamie Mason testified regarding her conversation with the Royal Motor Company salesman about the car's performance:
"Q: [Defense attorney] What about performance?
 "A: I think he said it was comparable or close to the ride or it was like a Cadillac or Lincoln Town Car, or something to that effect."
Also in her deposition, she said she spoke with the salesman about the warranty:
 "[H]e told us everything about the car. And he told us about the warranty and how, you know, it was the best. And about it being, you know, next to — or comparable to Cadillacs and Lincoln Town Cars. And that we were making a good deal. We couldn't get a better deal any place. And he would love to have our business. And he was going to be honest and tell us the truth, and that this was the best car because Chrysler was making better cars."
This Court has held that statements of opinion amounting to "puffery" or predictions as to events to occur in the future are not *Page 954 
statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim. See McGowan, supra, and Fincher v. Robinson Bros.Lincoln Mercury, Inc., 583 So.2d 256 (Ala. 1991). In McGowan we held that an automobile salesman's statements to a purchaser of a Chrysler Fifth Avenue that the car was "top of the line" and a "smooth riding" car were not statements of material fact, but were merely sales talk. Under the authority of McGowan, we hold that the Royal Motor Company salesman's statements as to the Fifth Avenue's performance were also sales talk. While inMcGowan the statements referred to the performance of the car, we hold that in this case the statements that the warranty was "the best" and that the warranty was comparable to that offered with other luxury cars, were statements commonly made in the course of selling cars and do not amount to misstatements of a material fact.
Before purchasing the car, the Masons viewed various national advertisements that referred to the "quality" of the Fifth Avenue. While the Masons are unable to describe with particularity Chrysler's advertising statements they say were fraudulent, the advertisements at issue were either the same, or substantially similar to, the advertisements for the 1987 Fifth Avenue at issue in McGowan. Regarding those statements, this Court in McGowan held as follows:
 "After considering the evidence in the light most favorable to McGowan, we conclude that a jury could not reasonably find that the statements complained of by McGowan in his fraudulent representation claim were representations of material fact. Additionally, we find no substantial evidence in the record of a present intent by the defendants to deceive McGowan the time he bought the car. Nor, if we assume for purposes of this appeal that a misrepresentation of a material fact did occur, do we find substantial evidence that McGowan was led to act to his detriment in justifiable reliance thereon. . . . [T]he statements in this case were 'puffing' and 'puffing' cannot be relied on as a statement of material fact; therefore, McGowan, under the particular facts and circumstances of this case, can not rely on the statements as a basis for his fraud claims."
631 So.2d at 847. We affirm the summary judgment as to the fraudulent representation claim.
Our holding in McGowan similarly controls the Masons' claim alleging fraudulent suppression. In order to withstand a defendant's properly supported motion for summary judgment on a claim of fraudulent suppression, the plaintiff must offer substantial evidence 1) that the defendant had a duty to disclose material facts, 2) that the defendant concealed or failed to disclose those facts, 3) that the concealment induced the plaintiff to act; and 4) that the plaintiff's action resulted in harm to the plaintiff. Interstate Truck Leasing,Inc. v. Bender, 608 So.2d 716 (Ala. 1992). A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent. Dodd v. Nelda Stephenson Chevrolet, Inc.,626 So.2d 1288 (Ala. 1993); Hardy v. Blue Cross Blue Shield of Alabama,585 So.2d 29 (Ala. 1991); King v. National Foundation Life Ins.Co., 541 So.2d 502 (Ala. 1989); see, McGowan v. Chrysler Corp.,631 So.2d 842 (Ala. 1993); Ala. Code 1975, § 6-5-102.
The Masons contend that on the fraudulent suppression claim they made a prima facie showing that the defendants owed them a duty to disclose recurring defects in the Fifth Avenue line of cars. Notwithstanding this claim, the Masons presented no evidence suggesting that Chrysler or Royal Motor Company owed them a duty to disclose information.
This Court has stated that whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case.Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch Inc.,611 So.2d 238 (Ala. 1992); Norman v. Amoco Oil Co., 558 So.2d 903
(Ala. 1990); see Ala. Code 1975, § 6-5-102. When the parties *Page 955 
to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested.Id. There was no evidence of a confidential relationship between the Masons and either of the two defendants, and there were no special circumstances to give rise to a duty to speak. The Masons' contacts with Chrysler Corporation consisted primarily of their viewing national advertisements before they purchased the vehicle and their presenting the vehicle for repair. Neither the Masons' depositions nor their affidavits in opposition to the summary judgment motion contain any evidence indicating that they inquired of Chrysler Corporation or Royal Motor Company regarding whether problems similar to theirs had occurred in other automobiles. The joint affidavit of Maurine Mason and Mamie Mason stated:
 "We did encounter significant problems with the car during the first year that we owned it. Almost immediately we had various problems, including a vibration and a surge or hesitation problem when initially accelerating the car. . . . All of these problems were noticed by us during the initial year to year and a half of ownership and we did return the vehicle on numerous times to the selling dealer asking that he repair it."
Although the Masons took their car in for repairs on several occasions, that fact standing alone — bringing a car in for repairs — does not establish any special relationship between the dealer and the purchaser that would require the dealer to disclose to the purchaser that the car may require additional repairs. The Masons complain that they were assured by the salesman and by Chrysler Corporation's promotional material that the car they bought would give a smooth ride, like that of a Cadillac, and that the warranty Chrysler Corporation offered was one of the best. They contend that these statements were false and that the dealer knew they were false. The statements may have been false, but they were not statements of material fact that a buyer could be expected to rely on.
Under the express provisions of its warranty, Chrysler Corporation would be responsible for repairing the car, but the plaintiffs produced no evidence that will support a fraud action based either on statements made at the time of the sale or on the defendants' failure, when the car was brought in for repairs under the warranty, to disclose that the problems with the car might recur. Because the plaintiffs failed to establish the necessary facts to support their fraud claim, the trial court correctly entered the summary judgment as to this claim. The extent and the nature of the harm the Masons claim in this case are substantially similar to those of the harm claimed inMcGowan, supra. As we noted in McGowan:
 "Even if there was substantial evidence that [the dealer] knew of the problems with the Fifth Avenue line, the record does not contain substantial evidence to support the inference that [it] actively or knowingly concealed these problems with an intent to deceive McGowan. Likewise, even if there was substantial evidence that Chrysler knew of the problems with its Fifth Avenue cars, McGowan produced no evidence of a confidential relationship or of any special circumstances between him and Chrysler, nor did he present substantial evidence that Chrysler knowingly or actively concealed from him its knowledge of the problems with the Fifth Avenue line."
631 So.2d at 847-48. The summary judgment is also affirmed as to the fraudulent suppression claim.
AFFIRMED.
MADDOX, ALMON, HOUSTON, KENNEDY and COOK, JJ., concur. *Page 956